UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CASE NO.  CR06-305 TSZ |
| ) | |
| v. ) | ORDER ON DETENTION |
| ) | |
| ALBERT KWOK-LEUNG KWAN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Offense charged:

  Possession of a Machine Gun, in violation of Title18, U.S.C., Sections 922(c)(1) and 924(a)(2).

Dates of Detention Hearings: September 13 and September 15, 2006

  The Court, having conducted a contested detention hearing pursuant to Title 18 U.S.C. § 3142(f), and based upon the factual findings and statement of reasons for detention hereafter set forth, finds that no condition or combination of conditions which the defendant can meet will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.  The Government was represented by William Redkey.  The defendant was represented by Joseph Conte and Eric Stahlfeld.

ORDER ON DETENTION- 1

FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION

A    <u>Posing a Risk of Danger and Flight by a History of Non-compliance with Federal Law</u>.

1. The (unsworn) [1] testimony of Investigator Perkins, of the Alcohol, Tobacco and Firearm Department of the Justice Department (hereinafter referred to as "ATF") presented largely uncontested facts as follows:

(a) Mr. Kwan has held three federal firearm licenses in this state and has been required to follow federal firearms regulations.  Each of the licenses require ATF administrative oversight and as a consequence, two of the licenses have not been renewed and one has expired.  Additionally, Mr. Kwan was advised by ATF of the necessity that he comply with all state and federal firearms laws and regulations on more than one occasion.

(b) The primary reason for the AFT denial of license renewals was that Mr. Kwan was not engaged in the manufacturing of firearms or ammunition sales, as the licenses permitted.

(c) Secondarily, AFT found compliance violations after inspection of the premises where the firearms were held.  Non-compliance took two forms: (1) a records review showed his failure to pay a regulatory tax for twenty (20) firearms; and (2) no showing that Mr. Kwan was engaged in manufacturing, or re-manufacturing of firearms.  Mr. Kwan later admitted in a deposition that the firearms were for his personal use and not for the business of manufacturing as his application for the license attests.

---

[1] When the Court inquired of the investigator, there was no objection to his being unsworn by the AUSA, nor by both defense counsel.

ORDER ON DETENTION- 2

1       (d) Third, an audit and records reviews of specific sales of firearms showed important deficiencies that Mr. Kwan failed to document the acquisitions and dispositions (sales) of a number of firearms. Additionally, ATF uncovered "Brady Bill," Title 18 U.S. 922 et seq., violations by Mr. Kwan's failure to conduct background checks for the sales of an unknown number of firearms.

(e) Audit investigators present during the audit characterize Mr. Kwan's behavior as uncooperative. *This was unequivocally disputed by defense counsel, Stahlfeld, who was also present during the audit*.

(f) ATF reported a violation in Mr. Kwan's transfer of numerous firearms between Idaho and Washington. ATF found that the transfers were conducted in violation of federal and state laws/regulations. *The defense contests this.*

2. In 2000, U.S. Border and Customs found a total of fifty (50) weapons secreted in a compartment within Mr. Kwan's vehicle while crossing the Canadian border into the United States. The firearms were <u>not reported</u> by defendant to customs officials.

3. The Government characterized Mr. Kwan as uncooperative in his compliance with this Court's subpoena to appear before the Grand Jury in the investigation of the death of AUSA Thomas Wales as not an insignificant matter. A material witness warrant garnered Mr. Kwan's first two appearances before the grand jury. Defense counsel indicated that Mr. Kwan asserted his Fifth Amendment rights therein. This assertion of Fifth Amendment rights continued in three later appearances before the same Grand Jury.

4. The Pre-Trial Services Division of the Court revealed real estate holdings and general employment background. Mr. Kwan owns two properties located in Bellevue and one in Boise, Idaho. His familial ties to the United States consists of one brother in

ORDER ON DETENTION- 3

Washington, however their contact appears to be minimal if not non-existent. While he is employed as a real estate broker and independent contractor for a Bellevue firm, no one from the community has come forward to illustrate or attest to any significant associational or personal ties here. While he identifies himself as an active U.S. reservist with top secret security clearance, little else is known about Mr. Kwan or his lifestyle, other than his travel to China to study linguistics..

5) Mr. Kwan's travel and his possession of an airplane also triggers concerns of flight risk. It has been learned from the Galvin Flying Services, where Mr. Kwan's plane is stored, that there are insufficient controls on his access or use of the airplane. These concerns also highlight how easy travel by private plane can assist Mr. Kwan to flee from this jurisdiction. For example, Galvin has told Pretrial Services Officer, Brenda Amundsen that Mr. Kwan could charter one of their planes or even a helicopter and be flown into Canada, Nova Scotia, etc., for Mr. Kwan (or any customer for that matter) is not required to show any travel paperwork prior to departure. They simply ask the customer if they have the appropriate documentation to clear customs and get back into the United States, and right now the only necessary identification documents are picture ID and a birth certificate. Moreover, by renting a plane from their flight school, he has at his disposal the ability to fly anywhere without a paperwork check, especially since his information is on record. A flight plan would not have to be provided. Even if a court order barred him from the flight school altogether, and he were to charter a plane, Galvin is only required to check the TSA no-fly list. If the person is on the list, they are banned from flying them.

6) The Government also indicated that persons such as Mr. Kwan can easily access Canada with merely a show of his driver's license and birth certificate–without the necessity of a passport.

ORDER ON DETENTION- 4

7) Mr. Kwan possesses over 200 weapons as part of his personal cache or gun collection. They are stored in his home. Removal of these weapons means moving over 3000 pounds of weaponry.

B. <u>No Reasonable Assurances Exist To Ensure Compliance with Court Appearance Orders</u>.

The Court has weighed the numerous aspects of any potential release order, such as active GPS tracking (limited to within the United States); halfway house placement until storage of his weapons is accomplished; surrender of his pilot's license and notification of the company leasing his plane to prohibit his use; and, curtailing his travel with the surrender of his United States, United Kingdom and Hong Kong passports. However, these safeguards are insufficient to meet the risks of flight and danger that Mr. Kwan presents. Moreover, the removal of his gun collection alone present dangerous foreseeable outcomes.

Here, Mr. Kwan is the subject of a felony prosecution of possessing a machine gun and a conviction for this charge will likely cause him substantial financial consequences, the loss of liberty and the permanent disposal/forfeiture of his weapons. The record shows that Mr. Kwan has been non-compliant with reporting requirements and concealed weapons while crossing the U.S. and Canadian border despite having knowledge of firearms and customs requirements. While the border incident was not referred for criminal prosecution, the conduct is deeply concerning and uncontested. Each of these violations occurred while Mr. Kwan possessed federal firearms licenses and thus giving him the authority to sell firearms and ammunition, locally and globally.

His legal obligations, however, require exacting record keeping, particularly of acquisitions and dispositions of firearms for a showing of reliability and trustworthiness. This is in doubt. *A fortiori*, unreported transportation of firearms and weapons sales and

ORDER ON DETENTION- 5

purchases are not insignificant in terms of presenting a danger to the community.

Overall, the record I have before me creates an inference that Mr. Kwan has a lifestyle that breeds a great sense of independence, in part based upon his real estate assets, the extent and worth of his gun collection, his documented travel outside the United States and his lack of community or associational (non-financial) ties to this jurisdiction. Moreover, conditions on travel become exceedingly more complicated when one has access to his own plane as well as the wherewithal to charter a small plane to flee this jurisdiction, this country or to go underground.

Notwithstanding the presumptions for release found in the Bail Reform Act, this Court is not satisfied that reasonable assurances exist to outweigh the risk of flight given this state's proximity to the U.S. Canadian border and danger that the defendant poses given his past conduct in violation of federal firearms regulations.

**It is therefore ORDERED**

(l) The defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody ending appeal;

(2) The defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

ORDER ON DETENTION- 6

(4) The clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Pretrial Services Officer.

DATED this 18th day of September, 2006.

/s/ M. J. Benton
MONICA J. BENTON
United States Magistrate Judge

ORDER ON DETENTION- 7